UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

FEB 0 9 2004

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| Plaintiff, | § | CIVIL ACTION NO: B-04-020 |
| v. | | |
| $19,500.00 (NINETEEN THOUSAND, FIVE HUNDRED DOLLARS IN UNITED STATES CURRENCY) | § | |
| Defendant | | |

## COMPLAINT FOR FORFEITURE IN REM

The United States of America, Plaintiff, alleges upon information and belief that:

1. This is a civil action in rem brought to enforce the provision of 21 U.S.C. §881(a)(6) for the forfeiture of U.S. Currency, which was used or intended to be used in exchange for controlled substances, or represents proceeds of trafficking in controlled substances or was used or intended to be used to facilitate a violation of Title II of the Controlled Substance Act, 21 U.S.C. §801 et seq.

2. This Court has jurisdiction over this matter by virtue of 28 U.S.C. §§ 1345 and 1355. The defendant property was, is, and will remain within the jurisdiction of this Court during the pendency of this action.

3. The defendant property consists of $19,500 in U.S. Currency and was seized from the person of Ramiro Tijerina Pena, on land, in Harlingen, Texas, within the Southern District of Texas under the circumstances detailed below.

4. On July 7, 2003, Officers from the Harlingen Police Department observed two men disembark a bus at a stop on Tyler Avenue in Harlingen, Texas. After the men collected their luggage, one of the men approached the police officers and asked if the connecting van to McAllen, Texas had arrived. Inspector Silva answered that it had not. Inspector Silva identified himself as a police officer and asked if he could speak to the man. The man consented.

5. Inspector Silva asked the man for identification and was shown an expired Texas driver's license in th name of Ramiro Tijerina Pena. Pena said that he had traveled from Orlando, Florida to collect an unemployment check. When asked the amount of the check, Pena answered $800. Officers asked Pena whether he was carrying large amounts of currency or weapons in his luggage. Pena responded that he was not carrying large amounts of money or any weapons. Pena said that he only had two twenty dollar bills, and showed them to the officers.

6. Pena was asked for consent to search his luggage which consisted of a medium sized Pullman type suitcase and a carry-on bag. Pena consented to the search. He opened the suitcase himself and ran his hands through the clothing inside declaring he had nothing to hide. Inspector Silva then searched the suitcase himself. Silva felt a bundle under the layers of clothing. When asked what was in the bundle, Pena replied that the bundle was a bag containing money. When asked how much money, Pena replied $19,000. When Inspector Silva asked Pena where he had obtained that amount of money, Pena would only answer that the money was owed to him.

7. Inspector Silva advised Pena that he was free to leave, but that the money would be counted at the police station and would be temporarily detained to determine its legitimacy. Pena agreed to accompany the officers to the police station to count the money.

8. At the office, the officers re-opened the suitcase and removed a large zip-locked plastic bag containing several bundles of U.S. currency. The bag was hidden between layers of clothing. The cash consisted of 16 one hundred dollar bills and 175 twenty dollar bills folded and secured by rubber bands, consistent with drug trafficking proceeds. Pena was again asked about the source of the currency. He stated that the money was repayment for a loan. Pena produced a telephone number which was out of service and was otherwise unable to provide any information concerning the person who allegedly gave him the money.

9. Additionally, bus ticket stubs in the name of Ramiro Pena showed that Pena had traveled between Marianne, Florida and McAllen, Texas during the months of June and August, 2003.

10. In addition, paper with notations of $378,000 - 322,000 = 56,000$ and $18,000 + 7500 = 245000$(sic) were in Pena's possession. Such notations are also consistent with drug trafficking activities.

10. A narcotics detection dog, "Kai", alerted on the currency indicating recent contact with narcotics.

11. The Defendant Currency was used, or intended to be used, in exchange for controlled substances, or was used or intended to be used to facilitate a violation of Title II of the Controlled Substances Act, 21 U.S.C. §801 et seq., and is therefore subject to forfeiture to the United States of America pursuant to 21 U.S.C. §881 (a)(6).

WHEREFORE, the United States of America prays:

1. Monition issue according to the normal procedure of this Court citing all persons having an interest in the above described defendant currency to appear on the return day of

process by filing a claim and answer pursuant to Rule C(6), Supplemental Rules for Certain Admiralty and Maritime Claims, or as ordered by the Court;

2. That Warrant of Arrest issue to the United States Marshal Service commanding the arrest of the defendant currency;

3. That judgment of forfeiture to the United States be decreed against the defendant currency; and

4. For costs and such other and further relief to which plaintiff may be entitled.

Respectfully submitted,

MICHAEL T. SHELBY
UNITED STATES ATTORNEY

_____ For:
James A. Hurd
Assistant United States Attorney
P.O. Box 61129
910 Travis, Suite 1500
Houston, Texas 77208
(713) 567-9341

4

## VERIFICATION

Before me the undersigned authority, personally appeared Special Agent Robert P. Foster, Federal Bureau of Investigation, who upon being duly sworn, stated under oath that he has read the foregoing Verified Complaint for Civil Forfeiture *in Rem*, and that the facts stated therein are based upon either his personal knowledge or information obtained by him in the course of his investigation into the matters described therein, are true and correct to the best of his knowledge and belief.

_____
Robert P. Foster, Special Agent
Federal Bureau of Investigation

Sworn to and subscribed before me, the undersigned authority, on this ____ day of February, 2004.

_____
Notary Public, State of Texas

My commission expires:

08\14\06



MARTHA D. INFANTE
MY COMMISSION EXPIRES
August 14, 2006