UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE  DIVISION

ʼed States District Court
ʰᵉrn District of Texas
FILED

JAN - 3 2005

Michael N. Milby, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO.  B-04-020 |
| v. | § | |
| | § | |
| $19,500 U.S. CURRENCY | § | |
| | § | |
| Defendants. | | |

<u>UNITED STATES' RESPONSE AND OPPOSITION TO
PENA 'S MOTION FOR LEAVE TO FILE CLAIM</u>

The United States files this response to, Ramiro Tijerina Pena's Motion For

Leave to File Claim, and would show as follows:

1. On November 30, 2004, the United States filed a Motion  requesting that

this Court  strike Ramiro Tijerina Pena's "Answer" and enter a default judgment

of forfeiture against Defendant Property, $19,500 United States Currency,  on the

grounds that Pena failed to file a Verified  Claim/Statement of Interest  in

accordance with Rule C(6)(a)(iii) of the Supplemental Rules for Certain Admiralty

and Maritime Claims, and there are no other claimants in this action (DOC # 10).[1]

2. On December 14, 2004,  Pena,  through his attorney, filed a document

entitled " Claim of Ownership" which he contends constitutes a verified

---

[1]The United States will refer to pleadings filed in this case by the docket entry number
assigned to them on the Civil Docket for Civil Action Number B-04-020. "DOC" refers to docket
entry.

claim/statement of interest (DOC # 12).   Under Rule C (6), the deadline to file a

verified claim/statement of interest was April 9, 2004, over 7 months ago.

    3. On December 14, 2004, Pena also filed a motion entitled "Motion For

Leave to File Claim" (DOC # 12).  In this motion, Pena requests that the Court

deny the United States' motion to strike his answer and enter a default judgment.

On the one hand, he alleges that the pleading filed on March 18, 2004, "Real Party

In Interest's Original Answer" constitutes a properly executed verified claim.  On

the other hand, if the "Answer" does not constitute a verified claim,  he requests

that he be permitted to file a verified claim 7 months past the original due date.

I.

**Pena Has Not Demonstrated Excusable Neglect Nor Other Mitigating
Circumstances For His Failure To Timely File A Verified Claim That Would
Justify Relief From Strict Compliance With The Requirements of  Rule 6 (C)
Permitting Him To File A Verified Claim/Statement Of Interest Seven (7)
Months After The Time For Filing Same Has Expired.**

    Seven months after the expiration of the 30 day deadline to file a verified

claim/statement of interest, Pena seeks an enlargement of time to file a verified

claim/statement of interest.  To succeed in this request, Pena should  demonstrate

that his failure to timely file a verified claim/statement of interest was the result of

excusable neglect or some other  recognized mitigating factor.

As justification for his failure to timely file a verified claim, Pena, through counsel, argues that he had manifested an intent to defend the judicial civil action to forfeit the defendant currency through contacts with the United States Attorneys Office and by filing a notice with the seizing agency prior to the institution of judicial proceedings. Yet, he offers no explanation of why he did not file a verified claim, in these proceedings, as required by Rule (C) 6.

Instead, it was admitted that Pena was available by telephone within the 30 day period for the filing of a verified claim. And that Pena has been available in California for the last 7 months. Neither of those circumstances prevented Pena from timely filing a verified claim, nor do they serve as a justification for Pena's inaction. Rather these facts support the conclusion that Pena was available to file a verified claim after judicial proceedings were instituted. *See United States v. Commodity Account No. 54954930* , 219 F. 3d 595, 597-98 (Court rejected claimant's argument that unverified claim informed all concerned parties of the basis for his claim and obviated the need for an answer. The district court properly required strict compliance with Rule C(6) by insisting on a timely answer. Attorney's mistakes were imputed to the claimant and deprived him of standing); *United States v. 6000 U.S. Currency*, 2000 WL 680339 (E.D. La. 2000)(Court in striking claimant's answer, rejected contention that claimant's incarceration

3

rendered his failure to timely file a verified claim excusable, where notice of seizure was sent to counsel  3 weeks before the claim was due).

Further, should  Pena's (who has been represented by able counsel) absence from the State of Texas require additional time to prepare and file a verified claim, he should and could have timely applied for an enlargement of time.  Rule C ( 6) (a)(i)(B), specifically states, that a person who wishes to assert an interest in the property must file a verified statement identifying that interest or right either 30 days after date of service ( in Pena's case) or "within the time that the court allows".  At no time prior to the filing of government's motion to strike (DOC #10),  did counsel seek an enlargement of time in which to file a verified claim nor has an explanation been offered regarding his reasons for failing to do so.

Nor should it be said or argued that Pena mistakenly thought or believed that the filing of the "answer" constituted  a "verified claim".   A review of the answer (DOC # 4)  itself leaves no question that it was intended to be an answer only. The pleading, beginning with its content to its form and format, was intended to be and is nothing more than an answer, beginning  with it's title, " Real Party In Interest's Original Answer", to its introduction,  "Comes Now, Ramiro Tijerina Pena...and files his Real Party's In Interest's Original Answer" to the  form and format of the numbered paragraphs which correspond to the Complaint's

paragraphs, to the language and content of each paragraph: "Real Party in Interest denies (admits) the allegations of paragraph (1-11) of the complaint." Therefore, any suggestion that it was contemplated that the filing of an answer would serve as both an answer and a verified claim is disputed by form, format and content of the answer.

Additionally, an answer and a verified claim serve very different purposes. In an answer, a party is required to either admit or deny the averments upon which the adverse party will rely. Fed. R. Civ. P. 8 (b). An examination of the filed answer, reveals that it follows the dictates of Rule 8 (b), in that, each line either admits or denies the allegations contained in the Complaint. On the other hand, in a verified claim, a claimant is swearing to and stating his/her interest in the defendant property and the nature of same, in order for the Court to determine whether the claimant has statutory standing to join the action and be heard. *United States v. One 1978 Piper Navajo,* 748 F. 2d 316, 319 (5th Cir. 1984)(citations omitted); *United States v. 175, 918.00 In U.S. Currency*, 755 F. Supp. 630, 632 (S.D.N.Y. 1991).

As a result, this is not a situation in which Pena attempted or intended to timely file a claim that was properly verified and contained the appropriate content, in order to comply with Rule C (6), and subsequently sought to amend it.

*United States v. Properties Described in Complaints 764 Rochelle Drive,* 612 F.
Supp. 465, 467-468 ( Standard prayer for return of property contained in a
pleading entitled "claim and answer" was insufficient to establish a right to  the
return of the property.  Though labeled as a claim, where the contents of a
pleading were substantively nothing more than answers, the pleading did not
constitute a verified claim for purposes of Rule C (6 ).  Additionally, it was
appropriate to deny a  request to "amend the claim"  because the request itself  was
nothing more than an original claim and the filed pleading sought to be amended
was nothing more than an answer).

It should be noted, that until the filing of the government's motion to strike,[2]
Pena made no effort to comply with the Rule C(6) requirement, that he file in these
proceedings a  verified claim/statement of interest identifying and setting forth the
nature of his interest or right to the defendant property.

Pena has not offered an explanation nor demonstrated mitigating factors
that would constitute excusable neglect, nor justify this court exercising it's
discretion and permitting the filing of a verified claim, 7 months after it was due.

---

[2]It should also be noted that in the government's motion (DOC # 10, page 4, n. 1), the
government  brought to the attention of the Court and Pena, that Pena had not filed a verified
claim.  Further the government brought to the attention of the Court and Pena, that the filed
answer may constitute a claim if it was properly verified, timely filed and contained all the
content necessary to otherwise constitute a "claim".

*United States v. Ford 250 Pickup,* 980 F. 2d 1242, (8th Cir. 1992)( Rule C(6)'s requirements regarding the filing of a claim and answer are unambiguous; therefore, district court did not err in denying leave to file an untimely claim where party was represented by counsel and received the appropriate notification. To avoid the strict requirements of Rule C(6) a party must show excusable neglect, or mitigating circumstances); *United States v. One Diary Farm*, 918 F.2d 310, 312 (1st Cir. 1990)(Rule C (6) has a time extension built in which permits claimants to **timely** (emphasis added) request further time to file a claim, therefore, district court should not overlook a claimants failure to meet the requirements of Rule C(6) where claimant failed to demonstrate any mitigating factor which would relieve him of the consequences of his failure to file a timely claim or answer, where he never attempted to file timely, where he did not rely on misinformation by the government, or where he did not expend considerable resources in preparation for trial).

Under these circumstances, the Court should deny Pena's request for leave to file an out of time verified claim/statement of interest. *See generally United States v. One Hundred Four Thousand Six Hundred Seventy-Four Dollars*, 17 F.3d 267 (8th Cir. 1994)(Where filings did not comply with either the time or content requirements of Rule C (6), and claimant did not explain why they did not

7

strictly comply with Rule C(6), the court properly refused to find excusable

neglect); *One 1978 Piper Navajo*, 748 F.2d at 318-19 (In a motion to set aside the

default judgment, claimant failed to establish excusable neglect under Fed. R. Civ.

P. 60(b).  Counsel's assertions were insufficient to establish excusable neglect

where the claimant had proper notice of the forfeiture proceedings, did not request

an extension of time from the court, and had not shown sufficiently why it did not

comply with the notice); *United States v. $1,437.00 U.S. Currency*, 242 F.  Supp .

2d 193, 195-96 (W.D. N.Y.)(Refused to find excusable neglect where there was no

verified complaint and attorney admitted he did not timely file an answer to the

forfeiture complaint).

Wherefore, for the reasons stated herein, the Court should deny Pena's

request via counsel, to grant him leave to file a verified claim/statement of interest,

approximately 7 months after the date for filing same has expired.

II.

**The Pleading "Real Party In Interest's Original  Answer"  Is Not Sufficient To Constitute A Properly Verified And Timely Filed Claim and Should Be Stricken**

A.  The Pleading "Real Party In Interest's Original Answer" Was Not Properly Verified.

Admittedly,  Pena has not filed a verified claim in the judicial proceedings, and

now claims that the pleading "Real Party In Interest's Original Answer"

8

(hereinafter referred to as the answer) is a substitute therefor because it meets all of the requirements of Rule C (6) for a verified claim.

In making that claim, Pena relies primarily on the proposition contained in *United States v. One Urban Lot,* 885 F. 2d 994 (1st Cir. 1989). While it is true that *One Urban Lot*, stands for the proposition that "where the claimant timely filed a verified answer containing all the information required in the claim, the answer may be deemed to have fulfilled the function of a claim in establishing the owner's standing", *Id. at 99*, that proposition does not mean that the mere filing of an answer alone triggers this exception to the requirement that both an answer and claim be filed.

As previously set forth in the government's Motion to Strike Answer and Motion for Default Judgment of Forfeiture, in construing Rule C(6) in this and other circuits, "strict conformity, not casual compliance, is the message of the case literature." *United States v. $288,914.00 in U.S. Currency*, 722 F. Supp. 267, 270 (E.D.La. 1989); *United States v. Real Property Located at 14301 Gateway Boulevard West* , 123 F. 2d 312 (5th Cir. 1997); *United States v. 6,000 Currency,* 2000 WL 680339 (E.D. La. 2000)(Strict compliance with Supplemental Rule C(6) is the norm)*; United States v. Commodity Account No. 549 54930*, 219 F.3d 595, 598 (7th Cir. 2000)("Strict compliance with Supplemental Rule C(6) is typically

required").

In order to have statutory standing to challenge a forfeiture proceeding, a claimant must strictly comply with the pleading requirements of Supplemental Rule C(6). *United States v. Currency $267,961.07*, 916 F.2d 1104, 1108 (6th Cir. 1990). A claimant has no statutory standing to challenge the forfeitability of property where he has either failed to file a verified claim or a timely answer. Under either or both situations, a default judgment is appropriate. *See United States v. Ford 250 Pickup 1990*, 980 F. 2d. 1242, 1244 (8th Cir. 1993) (Upholding default judgment where district court required strict compliance with Supplemental Rule C(6)); *United States v. $288,914 in U.S. Currency*, 722 F.Supp. 267 (E. D .La. 1989) (Default judgment appropriate when claimant failed to file a timely answer).

So it is against this background that the answer should be evaluated. As previously noted, the claim and answer under Rule C(6) serve distinct purposes. The claim requires a party seeking to challenge the government's forfeiture of property to "'demonstrate an interest in the seized item sufficient to satisfy the court of its standing to contest the forfeiture.'" *United States v. One 1978 Piper Navajo PA-31, Aircraft*, 748 F.2d 316, 319 (5th Cir. 1984)(citations omitted). The filing of a verified claim is essential to conferring statutory standing upon a

10

claimant in a forfeiture action and is a prerequisite to the right to file an answer and defend on the merits. *See Id.*; *United States v. $175,918.00 in U.S. Currency*, 755 F.Supp. 630, 632 (S.D. N.Y. 1991).

As previously noted, Pena's answer does not comply with Supplemental Rule C(6)(a)(i) and (ii). Rule C(6)(a)(i) states that "a person asserting an interest in or right against the property that is the subject of the action must file a verified statement identifying the interest or right." "The purpose of the verification requirement is to prevent false claims." *United States v. 51 Pieces of Real Property, Roswell, New Mexico*, 17 F.3d 1306, 1318 (10th Cir. 1994). The requirement that a claim be made under oath or verification, is designed to place the claimant at risk of perjury. *United States v. Commodity Account No. 54954930 at Saul Stone & Company*, 219 F.3d 595, 597 (7th Cir. 2000). Verification is not a mere technical requirement. *Id.*

The verification that was submitted as part of the March 18, 2004, pleading entitled "Real Party In Interest's Original Answer" (answer) serves none of these purposes. It neither subjects the claimant to perjury nor does it act as a deterrent to the substantial danger of false claims in forfeiture cases. This deficiency alone disqualifies the "answer" as a potential claim.

As noted in the government's previously filed motion, while the answer does

contain a "verification" section, the verification was not executed by Pena.  Rather
it was actually signed "Ramiro Pena/by permission" without more.   On its face,
this purported "verification" executed by an unidentified individual does not fulfill
the verification requirement of Rule C (6)  for the reason that it does not subject
Pena, much less the unidentified individual who signed the verification "Ramiro
Pena/by permission"  to possible penalties of perjury.

Counsel's revelation of how the document was prepared does not alter the
fact that the verification does not  subject either Pena nor counsel to penalties of
perjury. [3]  Counsel does not claim that he has personal knowledge of the facts set
forth in the complaint, as such he cannot swear whether the facts contained in the
complaint are true or not. *See Mercado v. U.S. Customs Service*, 873 F. 2d 641,
645 (2d Cir. 1989)( Affidavit of claimant's attorney that claimant was in
possession of money did not satisfy the requirements of  Rule C(6) because there
is a substantial danger of false claims in forfeiture proceedings more is required
that a conclusory,  hearsay  statement by claimant's attorney. )

Pena, as well, is immunized from penalties of perjury because there is nothing
in the verification's language, in light of Pena's presence in another state at the

---

[3]According to counsel, Pena has been in California for the last seven months.  He
appeared before a notary by telephone and directed counsel to sign his name.  (DOC #12,
paragraphs 6 & 7, Motion for Leave To File Claim)

time of its execution, that would subject him to penalties of perjury. First and
foremost the answer was not executed by Pena, the purported claimant.  While the
verification does state that Pena "appeared" the normally acceptable proof of that,
Pena's witnessed signature is absent.  It is generally accepted that a individual's
**witnessed signature** is proof that the identity of the person appearing and
subscribing to the content of the document has been verified by a independent
notary. While the notary's attestation states "Subscribed and Sworn to Before Me
on March 17, 2004...", the person subscribing was not Pena.   Further, the
unnamed person subscribing to the content of the answer and  person who
purportedly has personal knowledge are not one in the same.

   Counsel's revelations of how the document was executed , renders the notary's
verification meaningless. It also calls into question, whether due to his absence,
Pena actually reviewed the answer. The manner in which the verification was
drafted, which failed to reveal the idiosyncracies of its execution, renders it a
nullity. While this failure and deficiency is not fatal to the validity of an answer
(Rule 8 (b)) it is and should be fatal to the validity of a verified claim since the
purposes underlying the verification requirement have been thwarted. As written,
the "verification" subjects no one to penalties of perjury.  Whatever probative
value the verification may have had was destroyed by the manner in which it was

13

executed.

As previously noted, the verification is a nullity. The notary swore that Pena appeared before her and swore to the answer. The fact that the notary did not use the word "personally" does not alter the fact that Pena did not appear before her. Taken in its ordinary sense "appear" means that the person was "visible" to the notary. Webster's New World Dictionary, Third College Edition. With Pena physically in California and the notary present in Texas, these circumstances suggest that Pena was not visible to the notary at the time the answer was executed. Under these circumstances, the Court is left to speculate how the notary confirmed the identify of the person on the telephone. Generally when notarizing a document, an independent notary attests and swears that the notary has verified (usually by comparing a form of picture identification to the person appearing before him/her ) that the person appearing before the notary is in fact the person executing the document and attesting to the facts contained therein.

Accordingly, for all the reasons cited above, the verification has failed to serve its intended purposes and as a result, Pena has failed to establish that he has standing to contest the forfeiture.

B.  Content of "Real Party In Interest's Original Answer" Is Insufficient And Does Not Identify Nor State The  Nature of Pena's Interest In The Defendant Property

In addition to the requirement that a answer be properly verified to constitute a "verified claim", the answer must set forth the identity of the claimant and the nature of the interest or right being asserted in the defendant property. One who fails to timely file a proper claim setting forth his or her sworn interest in the defendant property and the nature of that interest, has no statutory standing to file an answer or otherwise participate in the forfeiture proceedings. *United States v. United States Currency in the Amount of $2,857.00*, 754 F. 2d 208, 214 (7th Cir. 1984).

Pena's answer is a typical one, in that it merely denies the allegations set forth in the complaint.[4] It does not contain a sworn statement by Pena identifying Pena's interest in the defendant property and the nature of that interest. As such, the answer does not satisfy the requirements of Rule C (6) and does not constitute a verified claim.

Furthermore, on its face, the admission (defendant property was seized from Pena's person) without more and when coupled with Pena's denial of the facts and circumstances surrounding the seizure (Answer, paragraphs 4-11, DOC # 4 and Complaint, paragraphs 4-11, DOC #1) is insufficient to establish that Pena has

---

[4]In paragraphs 2 and 3, the answer admits jurisdiction, venue and that the defendant property "was seized from the person of ...Pena". The answer denies all other facts and circumstances set forth in the complaint.

15

statutory standing to contest the forfeiture. The answer fails to meet the requirements of Rule C(6) in that it does not constitute Pena's sworn statement setting forth and identifying Pena's interest in the defendant property.

Despite his contention to the contrary, Pena has the burden of demonstrating an interest in the defendant currency in order to establish his standing to contest the forfeiture. *United States v. 9,041, 598. 68*, 163 F. 3d 238, 245 (1998); *United States v. $38,570.00,* 950 F. 2d 1108, 1111 (5th Cir. 1992). While Pena need not prove the merits of his underlying claim, "he must be able to show a facially colorable interest in the proceedings sufficient to satisfy the case or controversy requirements...." *Id. at 1112.* Therefore a claimant "must come forth with some evidence of his ownership interest in order to establish standing to contest a forfeiture. A bare assertion of ownership of the res, without more, is inadequate to prove an ownership interest sufficient to establish standing." *Id.*

Pena suggests that because he has admitted , that the defendant currency was seized from his person,  that alone suffices to establish his lawful and legal interest in the property thereby satisfying the requirements of Rule C (6).  In other words, Pena contends he need do no more than establish possession of the defendant currency to demonstrate the statutory standing required by Rule C (6). The United States contends that Pena's  admission,  coupled with his denials, does not

16

establish ownership nor a possessory interest in the defendant currency.

The contention that an admission to the seizure of the res from Pena's person constitutes ownership, overlooks that ownership is defined as having not only a possessory interest in the seized property but characteristics of dominion and control. *Id at 1113.* Pena's admission that the property was seized from his person, standing alone, does not establish that he was the owner of the property, or that he had a possessory interest in the property and the nature of that interest.

Pena's mere admission that the defendant property was seized from his person contains no evidence from which the Court could conclude that Pena has demonstrated his relationship to, domination of or control of the defendant currency. As a result, Pena's admission does nothing that would distinguish him from a mere custodian.

For possession to rise to the level of conferring standing, it means more than "mere custody". *Mercado v. United States Customs Service,* 873 F. 2d 641, 644 (2d Cir. 1989). As Pena noted, typically claims of naked possession are generally insufficient to establish standing. " Possession denotes custody plus a right or interest of proprietorship, *i.e.,* a domination or supremacy of authority over the property in question. *Id at 644 (citations omitted).* Additionally, there should be some additional evidence such as the nature of the claimant's

relationship to the seized property, that would distinguish the claimant from a mere custodian. *United States v. 244, 320.00 In United States Currency*, 295 F. Supp. 1050, 1061 ( S.D. Iowa 2003).

While Pena argues that "Pena's verified answer admitted that he had dominion and control over the currency", an admission that the defendant currency was seized from his person does not establish that he had dominion and control sufficient to confer standing. An admission that the defendant currency was seized from Pena's person, coupled with Pena's denials of the facts and circumstances surrounding its seizure, does not establish that Pena had dominion, control, title or a financial stake in the defendant currency, Therefore, it follows that the content of Pena's answer does not satisfy the requirements of Rule C (6), that a claimant set forth the nature of his/her lawful interest or interest in the property sought to be forfeited.

CONCLUSION

Pena has failed to set forth and demonstrate to the court any reasons or circumstances that would constitute either excusable neglect or mitigating circumstances that would justify his failure to comply with Rule C (6) and further justify this court granting him an enlargement of time to file a verified claim, approximately 7 months after the time for filing same has expired. Further, the

"answer" does not comport with Rule C (6) in that it was not properly verified and does not adequately set forth nor identify Pena's interest in the defendant property, and should not be treated as a properly verified and timely filed claim/statement of interest for purposes of establishing standing.

For the foregoing reasons and for those set forth in pleadings on file with this Court, the United States respectfully requests that Pena's Motion For Leave To File Claim and Pena's request that his "answer" be treated as both a verified claim and answer, be denied. Additionally, the United States respectfully requests that it's previously filed motion to strike answer and motion for default judgment be granted.

Respectfully submitted,

MICHAEL T. SHELBY
United States Attorney

JUDITH A. LOMBARDINO
Assistant United States Attorney
910 Travis, Suite 1500
P.O. Box 61129
Houston, Texas 77208
Phone: 713-567-9709
Facsimile: 713-718-3404

CERTIFICATE OF SERVICE

I, Judith A. Lombardino, Assistant United States Attorney, do hereby

certify that a true and correct copy of the above and foregoing has been served on

counsel of record via Certified Mail, Return Receipt Requested, and facsimile, on

the ___3RD___ day of ___January___, 2005, addressed to:

Attorney for Ramiro Tijerina Pena
Mr. Rolando Garza
5526 North 10th Street
McAllen, Texas 78504

Judith A. Lombardino
Assistant United States Attorney

20

CERTIFICATE OF CONFERENCE

On January 3, 2005, undersigned counsel attempted to confer with

counsel for Pena, but was unsuccessful.   In light of previous discussions and

pleadings filed with this court on this matter, it is presumed that counsel would be

opposed to the government's opposition.

Judith A. Lombardino