IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § § | |
| **Plaintiff,** | § § | |
| v. | § § | C. A. NO. B-04-020 |
| **$19,500 U.S. CURRENCY** | § § | |
| **Defendants.** | § § | |

## AMENDED OPINION AND ORDER

BE IT REMEMBERED that on August 19, 2005, the Court **GRANTED** Plaintiffs' Motion to Strike Answer and Motion for Default Judgment [Dkt. No. 10]. The Court **DENIED** Third Party Claimant Ramiro Pena's Motion for Leave to File Claim [Dkt. No. 13].

### I. Introduction and Procedural History

On February 9, 2004, the government filed a verified complaint for forfeiture in rem against Defendant property, $19,500 United States currency, seeking civil forfeiture under 21 U.S.C. § 881(a)(6) for forfeiture of proceeds used or intended to be used in exchange for a controlled substance or in violation of the Federal Controlled Substances Act. *See* 21 U.S.C. § 801, *et seq.* This forfeiture proceeding arises from an incident in Harlingen, Texas in which police officers seized $19,500 from a bag carried by Ramiro Pena. After questioning Pena, Harlingen Police Department officers discovered the money the government now seeks to forfeit. *See* Verified Cmplt. in Forfeiture [Dkt. No. 1]. Believing the currency amount and circumstances surrounding its transportation were consistent with drug trafficking, the officers seized the money, but advised Pena he was free to leave. Pena agreed to accompany the officers to the Harlingen Police Station where officers counted the money. Additional factors such as Pena's original representation to the officers that he was not carrying a large sum of

1

money, bus ticket stubs demonstrating travel between Florida and McAllen, Texas, numerical notations, and narcotic detection dog alerts indicating the currency recently came in contact with the narcotics led officers to believe the currency was used, or intended to be used, in exchange for controlled substances.  *See id.* ¶¶ 6-11.

Subsequent to filing the complaint for forfeiture in rem, the government provided notice of its intent to seek forfeiture to all parties with an interest in the Defendant property pursuant to Rule C of the Supplement Rules for Certain Admiralty and Maritime Claims.   Notice was published in the Brownsville Herald on three dates, March 14, 2004, March 20, 2004, and March 22, 2004.  The notice stated that anyone with a legal interest in the Defendant property who wished to contest the forfeiture must file a claim with the United States District Clerk within 30 days of the execution of process and an answer within 20 days thereafter pursuant to Supplemental Rule C.

The government also served Mr. Pena's attorney, Rolando Garza, with a copy of the complaint for forfeiture on March 11, 2004.  On March 18, 2004, Mr. Pena, through his attorney, filed an answer, which he purported to be verified.  In this answer, he admitted and denied the various allegations contained in the government's complaint.  Mr. Pena did not file a claim of ownership before filing his answer.  On November 30, 2004, the government filed a motion requesting the Court to strike the answer and enter a default judgment of forfeiture against Defendant property, $19,500, on the grounds that Mr. Pena failed to file a verified claim/statement of interest in accordance with Rule C(6)(a)(i)(A)(1) of the Supplemental Rules.

On December 14, 2004, Mr. Pena sought leave to file a claim.  On the same date Pena also filed a Claim of Ownership, which he argues constitutes a verified claim of interest.

## II.  Parties' Arguments

The government argues the Claimant's answer and subsequent motions did not sufficiently comply with the aforementioned Rule C(6).  Specifically, Supplemental Rule C(6) requires that a claimant file first a verified claim and, subsequently, an answer to the allegations in the complaint within 30 days.  The government claims Mr. Pena filed

an unverified answer but failed to file a timely *verified* claim of ownership. In support of its position, the government cites case law in which courts have taken a "strict compliance" approach to the application of Supplemental Rule C(6). *See, e.g., United States v. Commodity Account No. 549 54930,* 219 F.3d 595, 598 (7th Cir. 2000) (affirming district court's striking of unverified claim based on strict compliance); *United States v. 6,000 Currency,* 2000 WL 680339, at *1 (E.D. la. May 20, 2000) (citing strict compliance as standard in striking an unverified answer); *United States v. Ford Pickup*, 980 F.2d. 1242, 1245 (8th Cir. 1993) (stating the district court does not abuse its discretion by requiring strict compliance).

    The government acknowledges that although in certain instances courts have determined a timely *verified* answer contained enough information to satisfy the claim requirements, Mr. Pena's answer does not meet this requirement, and thus cannot be considered an adequate and timely claim of ownership.

    The Claimant argues his verified answer is sufficient to constitute both a verified answer and claim under Supplemental Rule C(6) because the answer admits to his dominion and control over the property in question and thus confers standing. See *United States v. $38,570 in U.S. Currency,* 950 F.2d 1108, 1112-13 (5th Cir. 1992) (ruling that a "bare assertion of ownership" is not enough to confer standing, but that combined with some additional evidence of ownership standing may be conferred).

### III.  Analysis

    "Whether a claimant has standing is the threshold question in every federal case, determining the power of the court to entertain the suit." *United States v. $138,381.00,* 240 F.Supp.2d 220, 227 (E.D. NY 2003) (quoting *In re Gucci*, 126 F.3d 380, 387-88 (2d Cir. 1997)). "To contest a forfeiture action [under Supplemental Rule C(6)], an individual bears the burden of demonstrating an interest in the seized item sufficient to satisfy the court of his standing." *United States v. $47,875 in United States Currency*, 746 F.2d 291, 293 (5th Cir. 1984). Supplemental Rule C(6) lays out the procedural requirement that a claimant must adhere to in order to establish standing to

contest a forfeiture action. *Id.*; *see also United States v. Funds from Prudential Securities*, 300 F.Supp.2d 99, 103 (D.D.C. 2004); *Mercado v. United States Customs*, 873 F.2d 641, 645 (2d Cir. 1989). Supplemental Rule C(6) states in relevant part:

> [t]he claimant of property that is the subject of an action *in rem* shall file a claim . . . verified on oath or solemn affirmation, and shall state the interest in the property by virtue of which the claimant demands its restitution and the right to defend the action.

Fed. R. Civ. P. Supp. R. C(6).

Under Rule C(6), a claimant must file a verified claim of ownership stating an interest in the property within 10 days after process has been executed, or within such additional time as may be allowed by the Court, and an answer within 20 after the filing of the claim. *See* Fed. R. Civ. P. Supp. R. C(6). The claim must be verified on oath or solemn affirmation and state the interest in the property. *See id.*

Verification is an "essential element" of a claim under Rule C(6). See *United States v. United States Currency in the Amount of $2,857.00,* 754 F.2d 208, 213 (7th Cir. 1984). Because forfeiture in rem cases usually involve large amounts of money, the verification is a necessary component of Supplemental Rule C(6) in order to prevent false claims. *See United States v. United States Currency in the Amount of $181,590.00*, 873 F.2d 641 (2d Cir. 1989); *see also Baker v. United States*, 722 F2d 517 (9th Cir. 1983). Verification prevents false claims by placing the claimant at risk of perjury. *United States v. Commodity Account No. 54954930 at Saul Stone & Company,* 219 F.3d 595, 597 (7th Cir. 2000). The question before the Court is whether Mr. Pena's answer, verified on his behalf by counsel, is sufficient to constitute a verified claim.

A recent Fifth Circuit decision, *United States v. One 1998 Mercury Sable Vin,* and the text of Supplemental Rule C(6) itself, supports the assertion that an attorney may verify a claim *if they have sufficient personal knowledge* of the claimant's interest in the property. 122 Fed.Appx. 760 (5th Cir. 2004),   In overturning a district court's ruling that a claimant did not have statutory standing because his claim was verified on his behalf by his attorney, the Court points to the language of Supplemental Rule C(6)(a)(ii), which states "'[i]n an in rem forfeiture action for violation of a federal statute:

an agent, bailee, *or attorney* must state the authority to file a statement of interest in or right against the property on behalf of another.'" *Id.* at 764 (citing Fed. R. Civ. P. Supp. R. C(6)(a)(ii) (emphasis in original)). The Court goes on to plainly state: "the Rule's plain language allows attorney verification." *Id.*

In this case, however, Mr. Pena's counsel did not verify the complaint on his client's behalf. Rather, counsel signed the verification "Ramiro Pena/by permission." Although counsel represents the verification was executed in his office, counsel confirms that "Pena was unavailable due to work and appear[ed] before a notary by telephone at which time he directed . . . counsel to sign his name to the verification." Claimant's Motion for Leave to File Claim, at p. 2. Thus, it is undisputed that Mr. Pena, whose name was signed by permission, did not appear personally before the Notary Public. As a result, the person who purported to verify he had personal knowledge of the facts stated in the answer did not appear personally before the Notary Public as required by Texas state law.

Texas law governing the verification in this case allows an attorney to verify a claim for a client if the attorney has first-hand knowledge of the facts verified. *See* Tex. R. Civ. P. 14; *Cantu v. Holiday Inns*, 910 S.W.2d 113, 116 (Tex. App. –Corpus Christi 1995, writ denied). In those instances, the attorney must appear before a notary public and personally plead and sign to the facts of the case. A Notary Public may take acknowledgments or proofs of written instruments. Tex. Gov't Code § 406.016. The person whose signature is notarized must personally appear before the notary at the time the verification is performed. Prohibited Acts, *Notary Public Educational Information*, Texas Secretary of State Roger Williams, at http//:www.sos.state.tx.us/statdoc/edinfo.shtml (Last visited Aug. 19, 2005). A Notary Public may not take an acknowledgment over the phone. Questions Frequently Asked, *Notary Public Educational Information*, Texas Secretary of State Roger Williams, at http//:www.sos.state.tx.us/statdoc/edinfo.shtml (Last visited Aug. 19, 2005). The facts, therefore, surrounding the verification of the answer in the present case are different from those in *One 1998 Mercury Sable Vin.* Had Mr. Pena appeared in person and

sworn to the statement contained in the answer, the verification would be valid. Similarly, had his attorney appeared personally and swore that he had personal knowledge of the facts supporting the claimant's interest, the verification would have been valid.  Neither case law nor Texas statutes, however, allow an attorney to sign his client's name, even with permission, when the client is not appearing before the Notary Public personally.                                        Because this answer is not validly verified, it does not qualify as a claim of ownership,[1] and thus the claimant has failed to establish standing to assert an ownership interest in this forfeiture action under Supplemental Rule C(6).  Stated differently, the unverified answer precludes the filing from serving as both an answer and a claim. *C.f. United States v. One Urban Lot*, 885 F.2d 994, 999 (1st Cir. 1989) (stating that "where the claimant timely filed a verified answer containing all the information required in the claim, the answer may be deemed to have fulfilled the function of a claim in terms of establishing the owner's standing.").

Moreover, because the answer originally filed cannot serve as a verified claim of

---

[1] The Court does not now address whether the answer, if it contained a valid verification, would otherwise sufficiently convey the information required in a claim of ownership.  Generally, however, in order to establish standing a "claimant need not prove the merit of his underlying claim, but he must be able to show at least a facially colorable interest in the proceedings sufficient to satisfy the case or controversy requirements." *United States v. $321,470 in United States Currency,* 874 F.2d 298, 302 (5th Cir. 1989)*.*  In the Fifth Circuit, in order to satisfy the requirement to establish standing, a claimant must come forward with "*some* evidence of his ownership interest." *$38,570,* 950 F.2d at 1112 (emphasis in original). Moreover, mere title or "a bare assertion of ownership of the res, without more, is inadequate to prove an ownership interest sufficient to establish standing." *Id.; see also United States v. Piper Navajo*, 748 F.2d at 319.  "Courts generally look to indicia of dominion and control such as possession, title and financial stake." *$38,570*, at 1113.  However, in *$38,570*, the court ruled that the claimant, who had money seized from a car he was driving, did not need to submit additional evidence to support his assert of ownership because "the government had admitted [the claimant's] relationship to the currency in its complaint." *Id.*  More specifically, the government's admission to the claimant's presence at the scene of the seizure and involvement with the money was sufficient evidence when coupled with the claimant's bare statement of "I own the currency" to establish standing under Rule C(6). *Id.*; *see also, e.g., United States v. United States Currency, $81,00.00*, 189 F.3d 28 (1st Cir. 1999); *United States v. $515,060.42 in United States Currency*, 152 F.3d 491(6th Cir. 1998); *United States v. $260,242.00 United States Currency*, 919 F.2d 686 (11th Cir.1990).

ownership, Mr. Pena's actual claim of ownership filed in December 2004 is nearly nine months late.  A number of circuits including the Fifth Circuit have held it is not an abuse of discretion to require strict compliance with the provisions of Rule C(6).  *See, e.g., United States v. $28,570 U.S. Currency,* 950 F.2d 1108, 1115 (5th Cir. 1992) (finding that district court did not abuse discretion in striking claim and answer as untimely under Rule C(6)); *United States v. Gateway Boulevard West,* 123 F.3d 312, 313 (5th Cir. 1997) (finding that pro se claimants may also be held to strict compliance with Rule C(6) and denying request for extension of time to file a claim of ownership); *United States v. $288,914.00 in United States Currency*, 722 F.Supp. 267, 270 (E.D. La. 1989) ("[i]n order to have standing to challenge a forfeiture proceeding, a claimant must strictly comply with the pleading requirements of Supplemental Rule 6(c).").

In certain circumstances, however, courts have used discretion to depart from the strict compliance standard. *See United States v. Prop. at 4492 S. Livonia Rd,* 889 F.2d 1258, 1262 (2d Cir. 1989) *(*finding a technical noncompliance may be excused by the court when claimant made sufficient showing of interest in the property); *United States v. $80,760.00 in United States Currency*, 781 F.Supp. 462 (N.D. Tex. 1991) (interpreting "pleadings and procedural practices under the Supplemental Rules liberally enough" to allow discretion).  Moreover, the filing of an administrative claim with the Drug Enforcement Agency or another administrative body does not satisfy the verified claim obligation under Rule C(6).  *See United States v. Beechcraft Queen Airplane*, 789 F.2d 627, 630 (8th Cir. 1986); *United States v. $1,437.00 U.S. Currency*, 242 F.Supp.2d 193, 196 (W.D. N.Y. 2002); *United States v. One 1990 Mercedes Benz 300 CE*, 926 F.Supp. 1, 4 (D.D.C. 1996).

In order to avoid the strict time requirement mandated in Rule C(6), a claimant who wishes to file an untimely claim must show excusable neglect or a meritorious defense.  *See United States v. One 1978 Piper Navajo PA-31 Aircraft,* 748 F.2d 316, 318 (5th Cir. 1984).  Indeed, Rule C(6) itself has a built-in provision whereby the Court may allow additional time to file an answer and claim.  The Claimant's request for additional time, however, should be filed during the time in which the answer and claim

would be filed absent any extension of time.

In the case before the Court, Mr. Pena has not shown excusable neglect in his failure to file a timely and proper answer followed by a claim of ownership. Additionally, his filing of an administrative claim did not relieve his obligation to file a timely answer and claim in this Court to contest the judicial forfeiture. The government in this case followed the proper procedure to notify potential claimants. Mr. Pena and his counsel received notification of the execution of process. During the thirty days following service of process, Mr. Pena did not file a motion requesting further time to file a claim nor has he since put forth any convincing arguments concerning why he did not file a timely verified claim of ownership. The fact that his client worked as a welder in California for seven months, encompassing the time when he should have filed a proper answer and claim is not excusable neglect, but rather a lackadaisical approach to asserting a claim of interest in this case. Mr. Pena was in contact with his attorney as demonstrated through the answer filed one week after his counsel was served with a copy of the complaint for forfeiture. Attorneys and clients must frequently navigate obstacles to legal representation. At the very least, Counsel could have filed a timely request for an extension of time. Furthermore, Supplemental Rule C(6) and relevant case law allow counsel to verify a claim of interest for a client, provided he has personal knowledge. Counsel's failure, therefore, to properly adhere to the standards required in filing a verified claim does not serve as excusable neglect. Finally, even if Mr. Pena had demonstrated standing to assert a claim, he has failed to present a meritorious defense. Mr. Pena has not asserted any "factual allegations to belie the [g]overnment's complaint, but merely has in [his] answer" provided a general denial to portions of the government's complaint that allege the currency was used or intended to be used in exchange for controlled substances or was used to facilitate a violation of the Controlled Substances Act. *See* Claimant's Answer, ¶ 11 (denying the allegations contained in paragraph 11 of the government's complaint for forfeiture); *see also One 1978 Piper Navajo PA-31*, 748 F.2d at 319-20 (stating that even if the claimant had demonstrated it had standing, it failed to present a meritorious defense to the forfeiture

and the district court's default judgment need not be disturbed); *United States v. $6,000 U.S. Currency*, 2000 WL 680339, at *1 (E.D. La. May 22, 2000) ("[E]ven if [the] Court found that the failure to file was the result of justifiable neglect, claimant has not advanced 'a defense to the forfeiture which would probably have been successful.'" (quoting *One 1978 Piper Navajo PA-31*, 748 F.2d at 318)).

Because Pena's answer does not constitute a claim, and he has not demonstrated excusable neglect or a meritorious defense sufficient to excuse his failure to comply with the time requirements mandated by Rule C(6), his Motion for Leave to File a Claim of Ownership is **DENIED**. After receiving proper notice of forfeiture but failing to file a proper verified claim and answer within 10 and 20 days, respectively, pursuant to Supplemental Rule C(6), Claimant lacks standing to contest this action and his answer is **STRICKEN**. The Court shall enter a final judgment of forfeiture separate from this opinion.

### IV. Conclusion

The Court finds the Claimant has not adequately complied with the requirements of Rule C(6) and thus does not have standing to contest this forfeiture. Therefore, the Court **GRANTS** Plaintiff's Motion to Strike the Answer and Motion for Default Judgment [Dkt. No. 10]. The Court **DENIES** Third Party Claimant Ramiro Pena's Motion for Leave to File Claim [Dkt. No. 13].

DONE this 19th day of August, 2005 at Brownsville, Texas.

_____
Hilda G. Tagle
United States District Judge